UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

AF Holdings LLC,

    Plaintiff,

v.                                                    Civil No. 12-1445 (JNE/FLN)

John Doe,

    Defendant.

AF Holdings LLC,

    Plaintiff,

v.                                                    Civil No. 12-1446 (JNE/FLN)

John Doe,

    Defendant.

AF Holdings LLC,

    Plaintiff,

v.                                                    Civil No. 12-1447 (JNE/FLN)

John Doe,

    Defendant.

AF Holdings LLC,

    Plaintiff,

v.                                                    Civil No. 12-1448 (JNE/FLN)

John Doe,

    Defendant.

AF Holdings LLC,

      Plaintiff,

v.                                                                                            Civil No. 12-1449 (JNE/FLN)

Roeum Hean,

      Defendant.

**Order re AF Holdings LLC's Objections to Order dated November 6, 2013**

In June 2012, AF Holdings LLC brought these actions against unidentified individuals for copyright infringement. In each action, AF Holdings alleged that it is the exclusive holder of rights to a copyrighted work of adult entertainment (Video)—either "Popular Demand" or "Sexual Obsession"—and that the defendant had unlawfully reproduced and distributed the work via the BitTorrent file sharing protocol. AF Holdings identified the defendant by an Internet Protocol (IP) address; it did not know the defendant's name.

A few days it had commenced the actions, AF Holdings moved for leave to take discovery before the conference required by Rule 26(f) of the Federal Rules of Civil Procedure. It sought permission to issue a subpoena under Rule 45 of the Federal Rules of Civil Procedure to an internet service provider to identify each defendant's name, current address, permanent address, telephone number, e-mail address, and media access control address. The magistrate judge denied AF Holdings' motions. AF Holdings objected. The Court permitted AF Holdings to issue subpoenas that sought the names and current addresses of each John Doe subject to certain conditions.

Several weeks later, AF Holdings voluntarily dismissed Civil Nos. 12-1445, 12-1447, and 12-1448 with prejudice and Civil No. 12-1446 without prejudice. *See* Fed. R. Civ. P. 41(a)(1). Several months after the Court had permitted AF Holdings to issue a subpoena and a few months after AF Holdings had amended its complaint to name the defendant, AF Holdings voluntarily dismissed Civil No. 12-1449 without prejudice. *See id.*

In light of a letter filed in Civil No. 12-1449 by an attorney who represented Alan Cooper and an Order issued by the United States District Court for the Central District of California,[1] it appeared to the magistrate judge that AF Holdings had "relied on forged documents in securing multiple court orders authorizing the discovery of information that, in turn, led to settlements." The magistrate judge concluded "that [the Court] has jurisdiction, under Rule 11 and Rule 60 [of the Federal Rules of Civil Procedure], to determine whether [AF Holdings] committed a fraud on the court."[2] Thus, several

---

[1]  *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-8333-ODW (JCx), 2013 WL 1898633 (C.D. Cal. May 6, 2013).

[2]  The magistrate judge cited *Trustees-Northern Nevada Laborers Health & Welfare Trust Fund v. Randy's Blasting, Inc.*, No. 3:09-cv-00525-RCJ-VPC, 2013 WL 1088837, at *4 (D. Nev. Mar. 14, 2013), to support the proposition that the 1993 amendments to Rule 11 posed no obstacle to imposing monetary sanctions under Rule 11. A few months after the magistrate judge's Order had issued, the United States Court of Appeals for the Ninth Circuit granted a motion for summary reversal and vacated the District of Nevada's order and judgment of March 14, 2013. *Tr. N. Nev. Laborers Health & Welfare Trust Fund v. Randy's Blasting, Inc.*, No. 13-15612, 2013 WL 6923075 (9th Cir. Dec. 24, 2013).

As to Rule 60, the magistrate judge acknowledged the Eighth Circuit had concluded a party may not seek relief from a Rule 41(a) voluntary dismissal under Rule 60(b). *Ajiwoju v. Cottrell*, 245 F. App'x 563 (8th Cir. 2007) (per curiam); *Scher v. Ashcroft*, 960 F.2d 1053 (8th Cir. 1992) (unpublished table decision). The magistrate

months after AF Holdings had voluntarily dismissed the actions, the magistrate judge ordered AF Holdings' attorney to disclose information about the identities of any individuals identified as a result of the discovery that the Court had authorized, the identities of any attorneys retained by the defendants, and the terms of any settlements between AF Holdings and the defendants.

The assignee's signatures on the assignment agreements, which were attached to each complaint, gave rise to the magistrate judge's concern about forged documents. In each case, AF Holdings alleged that it "is the exclusive rights holder with respect to BitTorrent-based reproduction and distribution of the Video," that "[t]he Video is currently registered in the United States Copyright Office," that it had "received the rights to this Video pursuant to an assignment agreement," and that "a true and correct copy of that agreement is attached hereto as Exhibit B." Exhibit B to each complaint is a Copyright Assignment Agreement. On behalf of the assignor of Popular Demand and the assignors of Sexual Obsession, Raymond Rogers executed the assignments. The assignments are executed by Cooper on behalf of the assignee, AF Holdings.[3] Cooper

---

judge declined to follow the unpublished decisions of *Ajiwoju* and *Scher*. *See* 8th Cir. R. 32.1A (stating that unpublished decisions "are not precedent"); *Young-Losee v. Graphic Packaging Int'l, Inc.*, 631 F.3d 909, 913 n.1 (8th Cir. 2011).

[3] As to Sexual Obsession, the Copyright Assignment Agreement defines "assignee" as "AF Holdings, LLC." It is nevertheless signed on behalf of "AF Films, LLC," as assignee. According to testimony before the magistrate judge, the appearance of AF Films in the signature block was a typographical error.

may not have actually signed the assignments, and he may not have authorized his signature to be affixed to them.[4]

Noting that "the Court [had] reopened [the cases] for the purpose of determining whether [AF Holdings] committed a fraud on the court," the magistrate scheduled case management conferences and ordered AF Holdings' attorney, an officer of AF Holdings, the defendants, and others to appear at the conferences. The conferences did not resolve the magistrate judge's concerns. Accordingly, the magistrate judge scheduled an evidentiary hearing to determine whether the assignment agreements were authentic. In scheduling the evidentiary hearing, the magistrate judge relied on a court's inherent power "to conduct an independent investigation in order to determine whether it has been a victim of fraud." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).

At the evidentiary hearing, whose sole focus was the authenticity of the assignments, Cooper testified that he did not sign the agreements, did not give anyone permission to sign his name on the agreements, and never held any position with AF Holdings. The magistrate judge found his testimony credible. After the evidentiary

---

[4] The Central District of California found that Cooper had not signed the assignment of Popular Demand. *Ingenuity 13*, 2013 WL 1898633, at *3 ("The Principals fraudulently signed the copyright assignment for 'Popular Demand' using Alan Cooper's signature without his authorization, holding him out to be an officer of AF Holdings. Alan Cooper is not an officer of AF Holdings and has no affiliation with Plaintiffs other than his employment as a groundskeeper for [John] Steele.").

Alleging that his name was used without his permission to execute documents on behalf of AF Holdings and another entity, Cooper brought an action against AF Holdings and others. Notice of Removal, *Cooper v. Steele*, Civil No. 13-2622 (D. Minn. Sept. 23, 2013). Cooper raised similar allegations in counterclaims that he asserted against Paul Duffy in an action in the United States District Court for the Northern District of Illinois. *Duffy v. Godfread*, No. 13-cv-1569, 2013 WL 4401390, at *2 & n.3 (N.D. Ill. Aug. 14, 2013).

hearing, the magistrate judge concluded that "AF Holdings [had] used fraudulent copyright-assignment agreements, attached to each complaint in all five of the instant cases, in order to expedite discovery and leverage settlement agreements." The magistrate judge elaborated:

> The copyright-assignment agreements attached as Exhibit B to each complaint in each of these five cases are not what they purport to be. Alan Cooper denies signing either agreement and also denies giving anyone else the authority to sign them on his behalf. AF Holdings failed to produce any credible evidence that the assignments were authentic. The Court has been the victim of a fraud perpetrated by AF Holdings, LLC. The Court concludes that the appropriate remedy for this fraud is to require AF Holdings to return all of the settlement money it received from all of the Defendants in these cases, and to pay all costs and fees (including attorneys' fees) incurred by the Defendants. After all settlement payments are returned and other fees are paid, all five cases should be dismissed on the merits, with prejudice.

The magistrate judge ordered (1) "AF Holdings / Prenda Law Inc." to repay the money received from the defendants who had agreed to settle the claims against them; (2) "AF Holdings / Prenda Law Inc." to pay all attorney fees and costs incurred by the defendants; and (3) the Clerk of Court to send a copy of the Order to the United States Attorney's Office for the District of Minnesota, the Minnesota Attorney General's Office, the Minnesota Lawyers Professional Responsibility Board, and the Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois.[5] The Court stayed the magistrate judge's Order pending resolution of AF Holdings' objections.

---

[5] The magistrate judge concluded that "it would not be a wise use of the Court's limited resources to *sua sponte* attempt to fully untangle the relationship between [Paul] Hansmeier, Steele, Duffy, [Michael] Dugas, [Mark] Lutz and Prenda Law, on the one hand—and the Plaintiff, AF Holdings, LLC., on the other" and that "[s]uch investigation can more effectively be conducted by federal and state law enforcement at the direction

"Federal magistrate judges are not empowered to exercise judicial functions under Article III of the Constitution. Instead, their authority is that conferred by Congress under the Magistrates Act, 28 U.S.C. § 636." *United States v. Torres*, 258 F.3d 791, 794 (8th Cir. 2001). Section 636 "enumerates certain duties, excepts others, and provides that a 'magistrate may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States.'" *Id.* (quoting 28 U.S.C. § 636(b)(3)). Here, the Court did not refer the actions to the magistrate judge to determine whether AF Holdings had committed a fraud on the Court. AF Holdings consistently objected to the magistrate judge's authority to determine whether it had committed a fraud on the Court. The magistrate judge had no such authority. *See Reddick v. White*, 456 F. App'x 191, 193 (4th Cir. 2011) (per curiam) ("A motion for sanctions under the district court's 'inherent' power is not a pretrial matter under § 636(B)(1)(a). Magistrate judges have no inherent Article III powers—they have only those powers vested in them by Congress. Congress has not created statutory authorization for magistrate judges to exercise inherent Article III powers." (citation omitted)); *Perry v. Del. River Port Auth.*, 208 F. App'x 122, 125 n.3 (3d Cir. 2006) (per curiam) ("As an initial matter, we do not believe the Magistrate Judge had the authority to grant or deny such a motion. A Rule 60(b) motion for relief from judgment can only be referred to a magistrate pursuant to 28 U.S.C. § 636(b)(3) . . . ."); *cf. United States v. Azure*, 539 F.3d 904, 910 (8th Cir. 2008) ("By failing to challenge this procedural defect prior to this appeal, Azure waived the

---

of the United States Attorney, the Minnesota Attorney General and the Boards of Professional Responsibility in the jurisdictions where the attorneys involved in this apparent scheme are licensed to practice law."

right to raise it as a basis for relief from the district court's revocation of his supervised release."); *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 925 F.2d 853, 857 (5th Cir. 1991) ("A party waives his objection when he participates in a proceeding before a magistrate and fails to make known his lack of consent or fails to object to any other procedural defect in the order referring the matter to the magistrate until after the magistrate has issued her report and recommendations.").

Even if the issue of fraud on the court were properly before the magistrate judge, *see* 28 U.S.C. § 636(b)(3), the Court would construe the magistrate judge's Order as a report and recommendation and subject it to de novo review. *See Reddick*, 456 F. App'x at 193-94 ("In sum, the motion for sanctions in this case—requested under the district court's 'inherent' power and issued after the conclusion of the underlying case—was not a nondispositive pretrial matter under § 636(B)(1)(a), and the magistrate was permitted only to enter a Report and Recommendation subject to the district court's *de novo* review."); *Perry*, 208 F. App'x at 125 n.3 ("When a motion is referred to a magistrate judge pursuant to § 636(b)(3), the magistrate judge is not authorized to enter judgment for the court, but instead may issue recommendations to the district court which are then subject to *de novo* review."); *LeGear v. Thalacker*, 46 F.3d 36, 37 (8th Cir. 1995) (per curiam) ("A magistrate judge's decision issued pursuant to section 636(b)(3) is not a final order; initial review rests with the district court."). Although the magistrate judge initially relied on Rules 11 and 60 of the Federal Rules of Civil Procedure to reopen the actions, the magistrate judge ultimately relied on the inherent power of the Court to determine whether it has been a victim of fraud.

8

"Because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44. "[F]raud on the court is distinct from mere fraud upon a party." *Superior Seafoods, Inc. v. Tyson Foods, Inc.*, 620 F.3d 873, 878 (8th Cir. 2010). "Fraud on the court which justifies vacating a judgment is narrowly defined as 'fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury.'" *United States v. Smiley*, 553 F.3d 1137, 1144 (8th Cir. 2009) (quoting *Bulloch v. United States*, 763 F.2d 1115, 1121 (10th Cir. 1985)).

> The standard for fraud on the court in the context of the court exercising its inherent powers . . . is higher and distinct from the more general standard for fraud under [Rule 60(b)(3)]. A finding of fraud on the court under this standard "is justified only by the most egregious misconduct directed to the court itself, such as bribery of a judge or jury or fabrication of evidence by counsel . . . ." Rules arising from the inherent powers of the courts have evolved to become exceedingly narrow, and to require that the power to set aside a judgment based upon fraud on the court involve the court actually being deceived by the misrepresentation.

*Id*. at 1144-45 (citations omitted).

"A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." 17 U.S.C. § 204(a) (2012). As noted above, AF Holdings alleged in each case that it "is the exclusive rights holder with respect to BitTorrent-based reproduction and distribution of the Video," that "[t]he Video is currently registered in the United States Copyright Office," that it had "received the rights to this Video pursuant to an assignment agreement," and that "a true and correct copy of that agreement is attached hereto as

9

Exhibit B." Exhibit B to each complaint is a Copyright Assignment Agreement, which is signed on behalf of the assignor or assignors by Rogers. That Rogers had the authority to execute the assignment has not been questioned. That he actually did execute the assignments has not been questioned. Each agreement was attached to the complaints to evince the transfer of the copyrights to AF Holdings, which is what each agreement did.

Nothing in § 204(a) requires an assignee to execute a transfer of copyright ownership. *Capital Concepts, Inc. v. Mountain Corp.*, Civil No. 3:11-CV-00036, 2012 WL 6761880, at *8 (W.D. Va. Dec. 30, 2012) ("Section 204(a) of the Copyright Act imposes no requirement that the recipient of the rights to the copyright also sign the agreement, or even that the agreement identifies the assignee."); *Johnson v. Tuff-n-Rumble Mgmt., Inc.*, No. CIV.A.99-1374, 2000 WL 1145748, at *7 (E.D. La. Aug. 14, 2000) ("[S]ection 204(a) does not expressly require that the *transferee* of the copyright interests sign the instrument of conveyance . . . ."). *See generally* 2 William F. Patry, *Patry on Copyright* § 5:47 (2014) ("Unlike Section 204(a), which requires, in the case of conveyances between strangers, that only the transferor sign the document assigning rights, Section 201(b) requires both the employer and the employee to sign an agreement transferring rights in the work made for hire to the employee . . . ."). Cooper's signatures were immaterial to the decision that granted AF Holdings expedited discovery. *See* 17 U.S.C. § 204(a); *cf. Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 722 F.3d 591, 601 (4th Cir. 2013) ("Courts have held that, in situations where 'the copyright [author] appears to have no dispute with its [assignee] on this matter, it would be anomalous to permit a third party infringer to invoke [Section 204(a)'s signed writing

requirement] against the [assignee].'" (alterations in original)); *Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1157 (9th Cir. 2010) ("When there is no dispute between the copyright owner and transferee, it would be unusual and unwarranted to permit a third-party infringer to invoke § 204(a) to avoid suit for copyright infringement." (internal quotation marks omitted)). AF Holdings' submission of the agreements with Cooper's signatures—legitimate or not, authorized or not—to evince the transfer of the copyrights to AF Holdings did not amount to a fraud on the Court.

For these reasons, the Court vacates the magistrate judge's November 6 Order. The Court directs the Clerk of Court to terminate all pending motions and to close the actions. Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. The Order [Docket No. 67 in Civil No. 12-1445; Docket No. 58 in Civil No. 12-1446; Docket No. 69 in Civil No. 12-1447; Docket No. 61 in Civil No. 12-1448; Docket No. 83 in Civil No. 12-1449] dated November 6, 2013, is VACATED.

2. The Clerk of Court shall terminate all pending motions and close the actions.

Dated: March 27, 2014

                                                                            s/Joan N. Ericksen
                                                                            JOAN N. ERICKSEN
                                                                            United States District Judge